UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**EMMANUEL DE JESUS
SANDOVAL-SALINAS,**

    *Petitioner*,

v.                                                              Case No. 5:25-CV-1624-JKP

**BOBBY THOMPSON, Warden,**
**South Texas ICE Processing Center, et al.,**

    *Respondents*.

## ORDER GRANTING
## PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is a Petition for Writ of Habeas Corpus (ECF No. 1) filed pursuant to 28 U.S.C. § 2241 and Petitioner's Motion for Temporary Restraining Order or, in the alternative, for Preliminary Injunction (ECF No. 2). Respondents (often referred to as "the Government") have filed a joint response (ECF No. 8) to both filings. Petitioner has filed no reply. The petition and motion are ready for ruling. After reviewing the briefing, provided evidence, and applicable law, the Court grants the petition for the reasons below. Consequently, the Court moots the motion.

### I. BACKGROUND

Petitioner, a native and citizen of Nicaragua, arrived in the United States in 2018 seeking protection from persecution and harm in Nicaragua. He was arrested in October 2022 for drug possession and driving while intoxicated. On November 3, 2022, Government immigration authorities (for ease of reference hereinafter referred to as "ICE") issued an arrest warrant and a Notice to Appear ("NTA") charging him as inadmissible under § 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA").

Petitioner applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT") on January 9. 2023. Early the next month, his October arrest resulted

in a conviction and sentence of three days confinement. On February 28, 2023, an immigration judge ("IJ") found him ineligible for asylum because he had not applied within one year after the date that he arrived in the United States. Although the IJ issued a final order of removal, the IJ also granted him withholding of removal to Nicaragua and protection under the CAT. Accordingly, the IJ recognized that Petitioner faces clear probability of torture if returned to Nicaragua. As a result, while he may not be removed to his home country, 8 U.S.C. § 1231(b)(3), he can be removed to a third country. *Johnson v. Guzman Chavez*, 594 U.S. 523, 531–32 (2021). On March 3, 2023, Petitioner was released under an Order of Supervision. Nothing suggests that he has failed to comply with that order.

On November 25, 2025, Petitioner reported to ICE as required by the terms of his release. Because he was subject to an order of removal, ICE took him into custody pending removal to his native country. He has been in custody since that date. ICE immediately began removal efforts. On December 3, 2025, it requested third-country removal with Mexico and served Petitioner with a Notice of Removal-Third Country, which he refused to sign. That same day, Petitioner filed the instant petition for writ of habeas corpus in which he asserts that his detention violates 8 U.S.C. § 1231(a)(6) of the INA as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). He further asserts claims under the Fifth Amendment and the Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2)(A).

The Court ordered Respondents to file a response within seven days and further "**OR-DERED** that any possible or anticipated removal or transfer is **IMMEDIATELY STAYED** until further order from this Court. Respondents shall not transfer Emmanuel De Jesus Sandoval-Salinas outside of this judicial district during the pendency of this litigation and until further Order of this Court allowing removal or transfer."

On December 4, 2025, ICE was notified of this Court's service order with its stay of removal. According to the Government:

> As a result of the Court's order, ERO cancelled the request for Sandoval-Salinas's third-country removal to Mexico. ERO cannot coordinate any removal plans while the District Court's order is in effect. This is because third-country removal requests are typically approved within a week after submission to the Mexican government, and once approved, removal occurs within approximately 48 hours. Due to these strict removal timeframes, ERO cannot proceed with the request for third-country removal unless the Court lifts the order prohibiting Sandoval-Salinas's removal.

The Government further states that, as of December 10, 2025, there is no indication that Mexico will refuse the request for third-country removal and that ICE intends to execute Petitioner's final order of removal as soon as the Court lifts the order prohibiting his removal.

On December 10, 2025, the Government filed their response to the petition. They argue that (1) Petitioner's detention is lawful under § 1231(a)(6), (2) his *Zadvydas* claim is premature because there is no good reason to belief that his removal is unlikely in the reasonably foreseeable future, and (3) it has afforded Petitioner procedural due process. Petitioner had seven days in which to file a reply and has not done so.

## II. LEGAL STANDARD

Habeas petitioners must show they are "in custody in violation of the Constitution or laws or treaties of the United States." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *4 (S.D. Tex. Sept. 26, 2025) (quoting 28 U.S.C. § 2241(c)(3)). They "bear[] the burden of proving that [they are] being held contrary to law; and because the habeas proceeding is civil in nature, the petitioner must satisfy [this] burden of proof by a preponderance of the evidence." *Id.* (quoting *Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011) and citing *Bruce v. Estelle*, 536 F.2d 1051, 1058 (5th Cir. 1976)). Courts "considering a habeas petition must 'determine the facts and dispose of the matter as law and justice require.'" *Id.* (quoting 28 U.S.C. § 2243).

## III. ANALYSIS[1]

Petitioner primarily argues that he is entitled to relief because his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678 (2001) in that his removal is not reasonably foreseeable. Respondents argue that Petitioner's detention is lawful under 8 U.S.C. § 1231(a)(6) and that Petitioner prematurely relies on *Zadvydas* because he has been detained less than six months.

**A. Detention and Reasonable Foreseeability**

"When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the alien's removal during a subsequent 90–day statutory 'removal period,' during which time the alien normally is held in custody." *Zadvydas*, 533 U.S. at 682; *accord* 8 U.S.C. § 1231(a)(1). Subject to exceptions within § 1231, subsection (a)(1) mandates that the Government remove the noncitizen during this initial 90-day removal period.

The removal period commences on the latest of three dates, two of which are limited to specific circumstances. *See* 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 241.4(g)(1)(i). For example, the date of a reviewing court's final order may provide the latest date when "the removal order is judicially reviewed and if a court orders a stay of the removal." *See* 8 U.S.C. § 1231(a)(1)(B)(ii). Or the date the noncitizen "is released from detention or confinement" may provide the latest date when the noncitizen "is detained or confined (except under an immigration process)." *Id*. § 1231(a)(1)(B)(iii). If neither of those circumstances provide the latest date, then the period commences on the "date the order of removal becomes administratively final." *Id*. § 1231(a)(1)(B)(i).

---

[1] In its analysis of the facts, issues, and arguments presented in this case, the Court notes close similarity to that presented in many recent Petitions for Writ of Habeas Corpus filed in the Western District of Texas, and specifically, the San Antonio Division. The Court finds the reasoning in these similar cases persuasive and finds the ultimate determination based upon this reasoning correct. For that reason, and for the sake of expediency, the Court follows these opinions closely. *See, e.g., Puertas-Mendoza v. Bondi*, Case No. 5:25-CV-0890-XR, 2025 WL 3142089 (W.D. Tex. Oct. 22, 2025); *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610 (S.D. Tex. Sept. 26, 2025).

The statute, however, also provides for an extension of the initial 90-day period in some circumstances. *Id*. § 1231(a)(1)(C). More specifically:

> The removal period shall be extended beyond a period of 90 days and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal.

*Id*.; *accord* 8 C.F.R. § 241.4(g)(1)(ii). Furthermore, certain noncitizens "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in paragraph (3)." 8 U.S.C. § 1231(a)(6). Subsection (a)(6) applies to noncitizens who are (i) inadmissible under 8 U.S.C. § 1182, (ii) "removable as a result of violations of status requirements or entry conditions, violations of criminal law, or reasons of security or foreign policy"; or (iii) have been determined "to be a risk to the community or unlikely to comply with the order of removal." *Zadvydas*, 533 U.S. at 682 (cleaned up).

While § 1231(a) provides authority in some situations to detain a noncitizen beyond the 90-day removal period for as long as is "reasonably necessary to secure removal," the Supreme Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id*. at 699. Furthermore, the Supreme Court recognized that six months is a "presumptively reasonable period of detention." *Id*. at 701. This six-month period includes the 90-day removal period. *See id*.; *Zavvar v. Scott*, No. CV 25-2104-TDC, 2025 WL 2592543, at *5–6 (D. Md. Sept. 8, 2025) ("Where the *Zadvydas* Court referenced the 90-day statutory removal period in its discussion of the six-month period, it is clear that the six months includes the original 90-day period of detention, plus an additional 90 days."). "But the Supreme Court has held that a noncitizen may not, consistent with the Due Process Clause, be detained indefinitely." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *2 (S.D. Tex. Sept. 26, 2025) (citing *Zadvydas*, 533 U.S. at 697). And *Zadvydas* does

5

not "permit the Government to indefinitely detain a noncitizen by the simple expedient of releasing and then re-detaining him in a series of 'presumptively constitutional' six-month increments." *Id*. at *9.

## B. Prematurity

Respondents argue that Petitioner's reliance on *Zadvydas* is premature because he has been detained less than six months. But this does not preclude detainees from challenging their detention on grounds that their removal is not reasonably foreseeable.

*Zadvydas* recognized a "presumptively"—not categorically—reasonable period of detention. 533 U.S. at 699; *Villanueva*, 2025 WL 2774610, at *10 ("[T]he presumption of constitutionality during that six-month period is rebuttable."); *Zavvar*, 2025 WL 2592543, at *5–6 (collecting cases). It did so merely to "guide" lower court determinations of whether removal is reasonably foreseeable. *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 397 (D.N.J. June 24, 2025) (quoting *Zadvydas*, 533 at 700–01). And *Zadvydas* unequivocally held that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized." 533 U.S. at 699.

"Some courts have held that until the six-month *Zadvydas* period concludes, detention is *conclusively* reasonable—in other words, that during that period courts are precluded from inquiring at all into whether removal is reasonably foreseeable." *Cruz Medina v. Noem*, 794 F. Supp. 3d 365, 374 (D. Md. Aug. 11, 2025) (collecting cases); *see also Chance v. Napolitano*, 453 F. App'x 535, 536 (5th Cir. 2011) (per curiam) (non-precedential opinion affirming a district court's finding that a challenge to post-removal detention was premature where *Zadvydas*'s six-month period had not passed); *Agyei-Kodie v. Holder*, 418 F. App'x 317, 318 (5th Cir. 2011) (per curiam) (same). But, again, *Zadvydas*'s creation of a *presumption* and the case's actual rule—"if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized

by statute"—command against that understanding. *See Zadvydas*, 533 U.S. at 699–700. "Even within the presumptively constitutional detention period, whether a noncitizen's detention is constitutional hinges on whether his removal from the United States is reasonably likely in the foreseeable future, not on how long the noncitizen has been detained." *Villanueva*, 2025 WL 2774610, at *10.

### C. Establishing Right to Relief

That said, a detained person who brings a *Zadvydas* claim before the presumptively reasonable six-month period has run will have a harder time establishing a right to relief. To make out a *Zadvydas* claim after the six months have run, a detained noncitizen need only "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. If they do so, "the Government must respond with evidence sufficient to rebut that showing." *Id*.

But before the six-month period has run, a Petitioner must do something more. *See id*. "In practical terms, before the six-month period elapses, the government bears no burden to justify detention, and the petitioner must claim and prove, that his removal is not reasonably foreseeable." *Munoz-Saucedo*, 789 F. Supp. 3d at 397. This means that petitioners must claim and prove "that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701 (recognizing that a noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future"); *Cruz Medina*, 794 F. Supp. 3d at 379 (recognizing that, after the presumptively reasonable period of detention, petitioners "need not *prove* that 'there is no significant likelihood of removal in the reasonably foreseeable future,'" but rather must articulate a 'good reason to *believe*' that removal is unlikely in the reasonable foreseeable future").

### D. Commencement of Presumptively Reasonable Six-Month Period

To determine the relative burdens and what must be shown to obtain habeas relief, courts

7

consider whether the six-month period of presumptively reasonable detention has elapsed or whether Petitioner remains within that period of detention. Respondents argue that Petitioner has only been detained since November 25, 2025, and thus remains within the period of detention that is presumptively reasonable. But that argument does not consider whether the six-month period may have commenced when Petitioner's order of removal became administratively final—the latest date the 90-day removal period could have commenced on the facts of this case—following his order of removal on February 28, 2023, and expired before Petitioner's current detention.

Respondents essentially argue that the six-month period does not commence until the Petitioner is actually confined. If they are correct, then Petitioner must satisfy the more stringent standard of proving that there is no significant likelihood of removal in the reasonably foreseeable future, rather than the less arduous standard of providing a "good reason to believe" that removal is not foreseeable.

*Zadvydas* is not clear on this point. The petitioners there were not released after or during their removal period. 533 U.S. at 684–86. And *Zadvydas* spoke of "continued" detention, which could refer to detention "continu[ing]" without release from the removal period. *E.g.*, *id*. at 699 (holding that "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute"). But *Zadvydas* "does not state whether the removal period, or the additional 90 days, counts toward the six months only when the noncitizen is actually detained." *Zavvar*, 2025 WL 2592543, at *4.

While *Zadvydas* may suggest "that only time in detention counts toward" the six-month period, it did so in the specific situation where the "noncitizen was continuously detained from the issuance of the removal order while efforts to execute the removal were ongoing." *Id*. That differs materially from when the "noncitizen was not detained upon issuance of the removal order,"

8

remained on release for significant time, and "then was subjected to post-removal order detention for the first time." *Id*. Such "distinction is significant because *Zadvydas* appears to have sought to balance the length of time a noncitizen would be held in detention against the need to afford the Government some time immediately following the issuance of the removal order to make and executed arrangements for removal." *Id*. Considering that

> some if not most of those arrangements, such as securing approval from a foreign country to remove an individual to that nation, can likely be pursued even while the noncitizen is on release, that balance may well differ in circumstances where, before the period of detention began, the Government had a period of time—indeed, in this case, over [two] years—to make the arrangements for removal.

*Id*. These points might suggest the presumptively reasonable "six-month period runs continuously from the beginning of the removal period, even if the noncitizen is not detained throughout that period." *Id*.

On the other hand, *Zadvydas* was, at base, about ensuring people are not *confined* for an unreasonable period. *See* 533 U.S. at 682, 699–700. It speaks in terms of post-removal *confinement*, *e.g.*, *id.* at 701 (noting "as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink"), and contrasted "detention" with "releas[ing]" noncitizens "under supervision," *id.* at 683 (noting "as the post-removal-period statute provides, the Government 'may' continue to detain an alien who still remains here or release that alien under supervision"). Further, because detention's basic purpose in this context is to ensure one's presence at the time of removal, limiting the presumption of reasonableness to the six months immediately following the removal period might undermine "necessary Executive leeway" to determine when to begin the removal process. *See id.* at 700–01.

Given these competing arguments, it is unclear whether *Zadvydas*'s six-month period runs continually from the beginning of the removal period or only when the challenging party is physically detained. But the Court need not decide that issue because Petitioner is entitled to relief

9

under either standard.

**E. Application**

Through the circumstances of his detention and the undisputed facts, Petitioner has proven there is no significant likelihood of his removal in the foreseeable future. The record is sparse from Petitioner's entry into the United States in 2018 through February 28, 2023, when an IJ ordered him removed from the United States. But on that same date, the IJ granted Petitioner a withholding of removal under 8 U.S.C.§ 1231(b)(3)(A), thereby providing him protection under CAT and precluding removal to his country of origin, Nicaragua. The grant of such a withholding of removal "substantially increases the difficulty of removing him." *Munoz-Saucedo v. Pittman*, 789 F. Supp. 3d 387, 398 (D.N.J. 2025).

On March 3, 2023, Petitioner was released subject to an order of supervision. Implicit in such a decision is a finding that Petitioner "was nonviolent and would remain so if released, that he was not likely to pose a threat to the community if released, that he was not likely to violate the conditions of his release, and that he did not pose a flight risk." *Villanueva v. Tate*, ___ F. Supp. 3d ___, ___, No. CV H-25-3364, 2025 WL 2774610, at *1 (S.D. Tex. Sept. 26, 2025) (citing 8 C.F.R. §§ 241.4(d)(1) and (e)). Release under an Order of Supervision of a noncitizen who has been ordered removed invokes "detailed regulations concerning when and how that Order of Supervision may be revoked." *Id*. at *2 (citing 8 C.F.R. § 241.4(*l*)). While an "Order of Supervision may be revoked if the noncitizen violates any of its conditions," or "when it is appropriate to enforce a removal order or when "[t]he conduct of the alien, or any other circumstance, indicates that release would no longer be appropriate," the Government must notify the noncitizen "of the reasons for revocation of his or her release" and afford the noncitizen "a prompt initial informal interview to allow the noncitizen an opportunity to respond to and contest the reasons for

revocation." *Id*. (citing regulations).

Petitioner remained released on that Order of Supervision through November 25, 2025, when he reported to the San Antonio ICE Office as his supervision order required. At that point, ICE detained him even though it did not revoke the supervision order and has apparently still not done so. Respondents state that on that date they took him into custody pending removal to his native country. But the withholding of removal precludes such removal. Recognizing that, Respondents sought removal to Mexico and provided Petitioner with a Notice of Removal-Third County to Mexico, which Petitioner refused to sign. But ICE cancelled the request for third-country removal purportedly because of this Court's issued stay of removal. At the time of Respondents' response, there are no ongoing efforts to secure any third-country removal, but Respondents state an intent to execute Petitioner's final order of removal as soon as the Court lifts its stay of removal. They also state that they have no indication from Mexico that it will refuse the request for third-country removal of Petitioner.

Unless the Government returns "to the immigration court to seek an order lifting the order for a withhold of removal," it cannot remove Petitioner to Nicaragua. *See Villanueva*, 2025 WL 2774610, at *10 (citing 8 C.F.R. § 1208.24(f)). The Government has not initiated such proceedings, and its submitted declaration does not state that any such proceedings are anticipated. Further, the declaration demonstrates that following Petitioner's February 28, 2023 order of removal, the Government took no efforts to remove him until after taking him into custody on November 25, 2025. And it has not formally revoked his release under the supervision order even though it has taken him into custody. There is no pending request for removal to Mexico because Respondents cancelled the request based on this Court's stay of removal. Petitioner, furthermore, has declined to sign the notice of removal to Mexico. The Government's declaration contains insufficient

11

information to find "that circumstances have changed to the point that [Petitioner's] removal is now reasonably foreseeable when it was not before." *Id*.

Additionally, "any efforts to remove [Petitioner] to a third country would likely be delayed by proceedings contesting his removal to the third country . . . identified." *Id*. When a petitioner "likely will have the opportunity to seek further relief from the Immigration Court, and then potentially file appeals from any adverse rulings," the circumstances "further demonstrate[] that removal is not likely in the reasonably foreseeable future." *Zavvar*, 2025 WL 2592543, at *8. Even when ICE has "identified a third country," noncitizens like Petitioner "would be entitled to seek fear-based relief from removal to that country, which would require additional, lengthy proceedings." *Munoz-Saucedo*, 789 F. Supp. 3d at 399 (cleaned up).

These factors all impact the propriety of continued detention. Notably, ICE did not commence Petitioner's current detention because it had located a country willing to accept him. ICE detained him without any explanation, without a removal plan, and without revoking his order of supervision. It still has not formally revoked the supervision order. While Respondents state that they stand ready to execute the removal order as soon as the Court lifts its stay on removal, the Court's stay of removal does not preclude Respondents from taking necessary steps to facilitate Petitioner's removal, such as obtaining approval from a third country, like Mexico, to accept Petitioner upon his removal. Nor does it preclude Respondents from releasing Petitioner under the existing order of supervision or other reasonable terms of supervision while Respondents secure approval from a third-country willing to accept Petitioner. The Court's stay precludes the physical transfer to another detention facility or removal of Petitioner without further order of this Court. Regardless of their purported procedures and strict timeframes for effecting removal to a third country, the Court's stay provides no basis for Respondents to cancel a request for third-country

removal. While Respondents may believe that removal is within the reasonably foreseeable future, that belief remains unrealized and entirely speculative at this point. When ICE commenced Petitioner's detention on November 25, 2025, it had made no determination that Petitioner could be removed in the foreseeable future. The Government cannot cure the wrongful commencement of detention through an after-the-fact determination of potential expeditious removal. This is especially true when there has been no stated progress on such removal during the Petitioner's continued detention, which now approaches one month. That there is no indication from Mexico that it will refuse the request for third-country removal is not sufficient.

When there has been a long period of time between an issued supervision order (in this case more than two years) and being taken into custody; no removal plan in place at the commencement of detention; an initial lack of explanation for detention; an unrealized, after-the-fact contention that the Government intends to expeditiously remove the petitioner; and no immigration proceedings concerning removal to a third country, the circumstances demonstrate that there is no substantial likelihood that Petitioner's removal is reasonably foreseeable. *See Puertas-Mendoza v. Bondi*, Case No. 5:25-CV-0890-XR, 2025 WL 3142089, at *2–4 (W.D. Tex. Oct. 22, 2025) (granting habeas petition on same grounds under substantially similar factual circumstances); *Villanueva*, 2025 WL 2774610, at *10 (granting habeas petition based on *Zadvydas* when detainee had withholding of removal, the Government had neither initiated proceedings to lift the order to withhold removal nor removed him for eight years following his order of removal, and there was no evidence that circumstances had changed to make removal reasonably foreseeable).

Under the circumstances of this case, the Court concludes that habeas relief is proper and *Zadvydas* requires Petitioner's release from his unlawful detention. The Court finds no need to address any other claim or challenge. And, while Petitioner requests attorney fees under the Equal

Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), the Fifth Circuit has held that recovery of attorney fees are not available in habeas corpus proceedings. *See Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023). The Court thus denies the request for fees.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Petition for Habeas Corpus (ECF No. 1). Given this ruling, the Court **MOOTS** Petitioner's Motion for Temporary Restraining Order or, in the alternative, for Preliminary Injunction (ECF No. 2). It is **ORDERED** that:

1. Respondents are **DIRECTED** to **RELEASE** Petitioner Emmanuel De Jesus Sandoval-Salinas from custody, under appropriate conditions of release, to a public place **no later than 3:00 p.m. December 21, 2025.**

2. Respondents must **NOTIFY** Petitioner's counsel of the exact location and exact time of his release as soon as practicable and no less than two hours before his release.

3. Any possible or anticipated removal or transfer of Petitioner under this present detention is **PROHIBITED**.

4. The parties shall **FILE** a Joint Status report no later than **3:00 p.m. December 22, 2025**, confirming that Petitioner has been released.

A final judgment will be issued separately.

**IT IS SO ORDERED** this 19th day of December 2025.

_____
**JASON PULLIAM
UNITED STATES DISTRICT JUDGE**